**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PIERRE D. WILLIAMS<br>772 S. 52nd St., Apt. B<br>Philadelphia, PA 19142<br><br>                                Plaintiff,<br><br>       v.<br><br>WEST CHESTER UNIVERSITY<br>701 Market St.<br>Philadelphia, PA 19106,<br><br>                                Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

C.A. NO: <u>2:24-cv-00948</u>

***TRIAL BY JURY DEMANDED***

**COMPLAINT**

Plaintiff, Pierre D. Williams, by and through his undersigned counsel, files the Complaint WITH DEMAND FOR TRIAL BY JURY and avers as follows:

**I.      PARTIES, JURISDICTION & VENUE**

1.      Plaintiff/Employee, Pierre D. Williams, is an adult male individual domiciled at the above-captioned address.

2.      Defendant/Employer West Chester University ("Defendant" or "WCU") is a state school of the Commonwealth of Pennsylvania State System of Higher Education.

3.      Plaintiff's nominal employer was, at all times material, Allied Universal Security Services ("Allied").

4.      WCU was a joint employer with Allied; WCU had power to control the nature and parameters of Plaintiff's activities. By way of example, but in no way limiting the foregoing, WCU controlled Plaintiff's schedule; he was supervised by WCU employees; and WCU had the authority to terminate Plaintiff from employ at WCU.

5.      Defendant employs more than 15 full time employees.

6.     Defendant employs more than 500 full time employees.

7.     This Court has federal question jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII").

8.     This Court has supplemental jurisdiction over the cross-filed claims brought under the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, § 951 et seq. (the "PHRA").

9.     On February 7, 2023, Plaintiff filed a Charge with the EEOC, No.: 530-2023-03023 (the "Charge") against Respondent. The Charge was filed within 180 days of the acts, pattern and practices giving rise to the Charge and pled in detail herein.  In the alternative, the Charge was filed within 300 days of the acts, pattern and practices giving rise to the Charge and pled in detail herein.

10.     On February 8, 2024, the EEOC issued a Dismissal and Notice of Rights.  This Complaint is timely filed within 90 days of the Notice of Right to Sue.

11.     Venue is appropriate in this Court because Defendant's place of business where Plaintiff was employed is located in Philadelphia, Pennsylvania.

12.     At all relevant times, Defendant is an "employer" as defined in and/or within the meaning of all relevant laws, including Title VII and PHRA.

13.     At all relevant times, Plaintiff was an eligible employee as defined in and/or within the meaning of all relevant laws, including Title VII and PHRA.

## II.     FACTUAL ALLEGATIONS

14.     Plaintiff is a Black, African American male.

15.     In or about March 2021, Plaintiff was hired by Allied and assigned to Hahnemann University Hospital.  The hours at this location were not favorable to Plaintiff, who is the father of a young child for whom he has sole custody. He has little help.  He needed hours and a location that would allow Plaintiff to get his son to school and to return home quickly.

16.     In August 2021, Plaintiff accepted reassignment by Allied to the Philadelphia campus of WCU at 701 Market St., Philadelphia, PA. This assignment fit Plaintiff's schedule very well.

17.     In late November 2021, Lisa Orenski, a White female, a WCU employee, was assigned by WCU to serve as an administrative assistant at the same security desk where Plaintiff was assigned.

18.     Within a week, Orenski began a pattern and practice of racially discriminatory and hostile conduct toward Plaintiff, other Black persons, and others of different races, religions and ethnicities.

19.     By way of example, and in no way limiting the foregoing, within a week of Orenski's assignment, in Plaintiff's presence, Orenski called Obbina Ooti, a Black employee from Nigeria a "damn Nigerian" to his face.

20.     That same day, Plaintiff orally complained of Orenski's conduct to Kia Faison, a Black, African American employee WCU. Faison is the Operations Manager WCU's Philadelphia campus.

21.     Faison said that she would address the situation, but she failed and refused to do so. This began a pattern of her failure and refusal to remediate the racially abusive and hostile work environment created by Orenski.

22.     Based on the clear hostility Orenski showed Plaintiff; and Faison's clear refusal to address it, Plaintiff orally complained to Mr. Lightfoot, Plaintiff's account manager at Allied. Lightfoot suggested reassigning Plaintiff. This was not acceptable; the location and hours of the work at WCU were more favorable than other assignments available to Plaintiff.

23.     Shortly thereafter, in Faison's presence, Orenski brought up the work of her personal accountant, whom she called "Don the Dago." Plaintiff requested, in Orenski's presence, that Faison remediate this; Faison pretended not to know what that derogatory term meant and took no action.

24.     In or about January 2022, shortly after winter break, Orenski harassed Plaintiff because Plaintiff refused to engage in small talk with Orenski. Plaintiff behaved professionally at all times.

3

However, he knew Orenski's racist tendencies and refused to engage in further conversation. Faison intervened and told Plaintiff she felt sorry for Orenski and Plaintiff should engage with her.

25.     Plaintiff refused. The work environment was cold, but Plaintiff continued to act with utmost professionalism. He did not wish to be reassigned and, although it was stressful and emotionally difficult, he endured the environment and maintained his composure throughout.

26.     Despite Plaintiff's clearly expressed desire not to engage with Orenski, Orenski continued to blurt out offensive comments throughout the day. By way of example, and in no way limiting the foregoing, Orenski told Plaintiff she did not trust Asians. Orenski also freaked out when a little person walked by. Orenski talked about her sex life in Plaintiff's presence to Faison. These are additional reasons why Plaintiff could not communicate with Orenski. Not only did Orenski demonstrate distasteful racist behavior, any conversation Plaintiff did have with Orenski devolved in to some racist remark by Orenski.

27.     Faison was well aware of Orenski's conduct; Faison tolerated it and allowed it to continue. Faison sat and stared at the wall when Orenski made racist comments in Faison's presence. Faison engaged in the conversation about Orenski's sex life, even after knowing it made Plaintiff uncomfortable and was entirely inappropriate.

28.     In or about March 2022, Orenski told a Black student, Bria Schoolfield, that she had pretty eyes. Schoolfield thanked Orenski. Orenski responded, "you're not fully Black."

29.     Schoolfield sent a complaint to this effect in or about September 2022 (after additional hostility escalated against Plaintiff). Defendants failed to take remedial action.

30.     Shortly after this incident, Plaintiff again complained to Faison. Faison again failed to act.

31.     Based on Faison's failure to act, Plaintiff complained in a face-to-face meeting to Joe Santivasci, WCU's Senior VP of Financial Aid at the Philadelphia campus. Santivasci told Plaintiff

4

that Plaintiff must respect the chain of command and complain to Faison first.  Plaintiff told Santivasci

he did that. Santivasci shut Plaintiff down and took no further action.

32.     The work environment became colder and increasingly hostile.  Plaintiff never broke

his professionalism.  He endured the environment for the sake of his family.

33.     During Ramadan that year (April 1 through May 1, 2022), a Muslim student asked

Orenski, in Plaintiff's presence, whether there was a place to pray.  Orenski said no, but Plaintiff

guided the student to a quiet room.  Orenski became mad at Plaintiff and told him "I work for West

Chester, you're just security."

34.     Orenski complained to Faison, falsely asserting that Plaintiff was disrespectful. Faison

called a meeting about the Ramadan incident, which was attended by Plaintiff, Faison, Orenski and

Ooti.  Orenski denied knowing what Ramadan was, which was clearly false.  Orenski said that Plaintiff

was disrespectful to her, which was also false.  Plaintiff brought up a number of racist comments by

Orenski, including but not limited to "you're not fully black" (*see supra*) "Don the Dago" (*see supra*).

Orenski falsely denied making the racial comment to Schoolfield and falsely denied knowing what

"Dago" meant.

35.     When confronted about her comments to Plaintiff about not being a WCU employee,

Orenski began to cry.  Instead of reprimanding Orenski for her misconduct, Faison reprimanded

Plaintiff for being disrespectful.  This was absurd.

36.     As a result of that meeting, no action was taken to remediate the hostile work

environment.  Instead, Faison bought into the clearly false claims of ignorance and suggested "it's a

new day" and there would be no further problems with the work environment. This was bogus –

everyone knew of Orenski's racist behavior and no reasonable action was taken to remediate.

37.     Orenski's outrageous conduct did not stop.  When students suggested ordering pizza

from Pizza hut, Orenski blurted out "they call it pizza slut in my house."  This comment was heard

by students, faculty and staff, including Faison.  However, Faison did not single out Orenski for this; instead, she lectured "the front desk" about professionalism.  Plaintiff never engaged in any behavior that could be considered unprofessional.  This shows Faison's failure and refusal to remediate the hostile work environment.

38.     In or about May 2022, *after* several meetings whereupon Orenski's misconduct was pointed out by Plaintiff, Orenski made another racist statement to a Black student.  Madison Oliver, a Black female student at WCU, approached the security desk.  Orenski said "you have nice hair." Ms. Oliver thanked her, and Orenski responded, "it's not yours, is it?"  Ms. Oliver was angry and Plaintiff intervened so that Ms. Oliver would keep her cool.

39.     Plaintiff complained to Faison about the hair comment.  Faison again failed and refused to take any remedial action.

40.     On or about June 14, 2022, Plaintiff's job was threatened by Faison.  Plaintiff offered a chicken wing to Faison but not Orenski.  Faison told Plaintiff to offer her one, and told Plaintiff that WCU would get rid of Plaintiff and Obbina before they got rid of Orenski.

41.     Plaintiff took the threat to his employment seriously.  He emailed a complaint in June 2022 to the Affirmative Action – Equal Opportunity Office at WCU's main campus.

42.     During the summer break, Defendant took no action.

43.     However, Orenski's misconduct continued.  Orenski, who lives in New Jersey (the opposite direction of Plaintiff), waited for Plaintiff to finish his security rounds before she left. When Plaintiff inquired as to what Orenski was doing, she approached Plaintiff very close to his face and said "I was waiting for you."  Plaintiff was horrified by this stalking conduct.

44.     In or about August 2022, at the end of the summer break, Santivasci called a meeting with Faison and Orenski.  Plaintiff told Santivasci about the harassing conduct of Orenski that

occurred before and after Plaintiff's complaint to WCU Main Campus.  Santivasci took no remedial action whatsoever.

45.     In or about September 2022, Corin Chapman, Labor Relations Manager at WCU Main Campus, met with Plaintiff individually.  Plaintiff described Orlowski's conduct and racist comments.  Chapman disingenuously inquired as to whether Orenski knew she was making racist statements.  Chapman took no remedial action.

46.     On or about October 11, 2022, Orenski had a temper tantrum and threw things around because Plaintiff said he was going on break at 1:00pm.  This was a normal break time for Plaintiff.  Orenski was clearly looking for things to complain to management about – she ran over to Santivasci immediately after her outburst.

47.     On or about November 1, 2022, Orenski had another outburst towards Plaintiff.  Plaintiff patrolled the area and closed the door to keep a homeless person out of the school.  Orenski jumped up and screamed at Plaintiff "Kia said to keep the door open!" and she ran to reopen the door.  She was loud enough to be heard by many people in the school.  Ooti and another WCU employee came out to investigate the disturbance.

48.     The next day, November 2, 2022, Orenski had another outburst about Plaintiff's use of Clorox wipes to keep his workstation clean.  Plaintiff was allowed to use the wipes, which were provided by WCU.  Orenski screamed at Plaintiff about using the wipes.  Again, employees of WCU came out to investigate the disturbance.  Plaintiff was told to take a walk to deescalate the situation.

49.     On November 3, 2022 Plaintiff met with his account manager at Allied, Mrs. Gregory.  Gregory told Plaintiff that Plaintiff was subject to a "client removal."  That is, WCU terminated Plaintiff from its employ.  The stated reason for the termination was that it was time for Plaintiff to move on.  Mrs. Gregory said that Faison would write Plaintiff a letter of recommendation.  (Plaintiff

did not receive the letter).  However, it is clear that Plaintiff was not terminated for cause, but instead was terminated to accommodate the racist behavior of Orenski.

50.     Plaintiff was out of work for one week before he was reassigned by Allied.

51.     As a result of Defendants' conduct, Plaintiff suffered extreme embarrassment, humiliation, and severe emotional distress.

52.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe injuries, which include but are not limited to:

        a) Lost wages;
        b) Lost back pay;
        c) Lost future wages;
        d) Lost benefits;
        e) Embarrassment and humiliation;
        f) severe emotional distress; and
        g) other damages as described in further detail in this pleading and as will become evident through the course of discovery.

53.     Defendant is liable to Plaintiff for reasonable attorney's fees and costs incurred.

**COUNT I     RACE/COLOR DISCRIMINATION**

54.     Repeats and realleges paragraphs 1-53 as if set forth at length herein.

55.     Plaintiff is a member of a protected class.

56.     Plaintiff is and was, at all times material, qualified for the position he sought to retain.

57.     Defendant took adverse employment action against Plaintiff.

58.     Defendant changed the terms and conditions of employment against Plaintiff because of Plaintiff's race and/or color.

59.     Defendant's decision to terminated Plaintiff from employ was an adoption of the racist behavior of Orenski.  Defendant knew of Plaintiff's complaints of Orenski's racism.  Nevertheless, following repeated outbursts by Orenski, Plaintiff was terminated from WCU.

60.     As a result of Defendant's discriminatory conduct, Plaintiff suffered harassment and several adverse employment actions as set forth above and incorporated herein by reference.

61.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages available under law and for such other relief is this Court deems just and proper.


**COUNT II     HOSTILE WORK ENVIRONMENT**

62.     Repeats and realleges paragraphs 1-61 as if set forth at length herein.

63.     Defendant's conduct created a hostile work environment, in violation of Title VII.

64.     Defendant suffered intentional discrimination because of his race, color and/or national origin

65.     As set forth in detail above and incorporated herein by reference, and as will be established through the course of discovery, the discrimination was severe.   In addition, the discrimination was pervasive.

66.     The discrimination detrimentally affected Plaintiff.

67.     The conduct of Defendant would detrimentally affect a reasonable person in Plaintiff's circumstances.

68.     The discriminatory conduct was performed by/at the direction of persons that create *respondeat superior* liability to Defendant.

69.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages available under law and for such other relief is this Court deems just and proper.

**COUNT III   RETALIATION**

70.     Repeats and realleges paragraphs 1-69 as if set forth at length herein.

71.     As set forth above and incorporated herein by reference, Plaintiff's complaints about mistreatment directed toward him were protected activities under Title VII.

72.     As a result of Defendant's discriminatory conduct in response to Plaintiff's complaints, Plaintiff suffered harassment and several adverse employment actions as set forth above and incorporated herein by reference.

73.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages available under law and for such other relief is this Court deems just and proper.

**COUNT IV            PENNSYLVANIA HUMAN RELATIONS ACT**

74.     Repeats and realleges paragraphs 1-73 as if set forth at length herein.

75.     The foregoing violations of Title VII also constitute violations of the PHRA.

76.     As a result of Defendant's discriminatory conduct, Plaintiff suffered harassment and several adverse employment actions as set forth above and incorporated herein by reference.

77.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages available under law and for such other relief is this Court deems just and proper.

**COUNT V   PHILADELPHIA FAIR PRACTICES ORDINANCE**

78.     Repeats and realleges paragraphs 1-77 as if set forth at length herein.

79.     The foregoing violations of Title VII and PHRA also constitute violations of PFPO.

80.     As a result of Defendant's discriminatory conduct, Plaintiff suffered harassment and several adverse employment actions as set forth above and incorporated herein by reference.

81.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands judgment against Defendant for all damages available under law and for such other relief is this Court deems just and proper.

*TRIAL BY JURY DEMANDED*

Respectfully submitted,

CREECH & CREECH LLC

_____

TIMOTHY P. CREECH
1835 Market St., Suite 2710
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688
Timothy@CreechandCreech.com

DATED:     March 5, 2024